
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WAYNE ALLISON,<br><br>Plaintiff,<br><br>vs.<br><br>FARMER BROS. CO., d/b/a<br>FARMER BROS,<br><br>Defendant. | CV 17-02-BLG-SPW<br><br>OPINION AND ORDER |

Plaintiff Wayne Allison filed this action against his former employer, Farmer Bros. Co., for wrongful discharge. (Doc. 1). Farmer Bros. has moved for summary judgment on Allison's claims and requested oral argument on the same. (Doc. 31). For the reasons set forth below, Farmer Bros.' motion is granted. Farmer Bros.' request for oral argument is denied.

I.  **Statement of Facts**

Wayne Allison started working for Farmer Bros. in 1983 as a route driver. (Doc. 37 at 6). During the course of his employment with Farmer Bros., Allison developed a computer tool to enhance his ability to provide coffee and equipment price quotes to customers. (*Id.*). Farmer Bros. eventually made Allison Direct Store Delivery Pricing Director and began using his pricing tool all around the country. (*Id.*).

1

In 2014, Farmer Bros.' Senior Leadership Team decided to make changes in the company to increase overall market competitiveness and future growth. (*Id.* at ¶ 2). Company headquarters and the rest of the operation were relocated from Torrance, California, to Northlake, Texas. (*Id.*). Significant changes to the organization as a whole were also made, including structure, centralization, technology, and talent. Some in the company knew this process as "Project Evolution." (*Id.*).

Allison's group, the Direct Store Delivery Group, was subject to this company-wide process. In January 2016, the DSD Group leader began implementing structure changes, position eliminations, and strategic initiatives aimed at improving the DSD portion of the business. (*Id.* at 3). At that time, numerous DSD Group employees' positions were eliminated and not replaced. (*Id.*). Allison became concerned that other DSD employees were being separated from the company without prior warning. (Doc. 36-2 at 40:2-41:6)). In mid-January, the leadership team arranged a conference call for company directors. Three of the directors, with long tenures with Farmer Bros., were "pulled" from the call and terminated from the company. (Doc. 36-2 at 40:2-22).

By March 2016, Allison knew that Farmer Bros. was making changes that affected his role and that his job was in danger of being eliminated. (Doc. 36-3 at 94:13-98:3). Specifically, Allison knew that Farmer Bros. was making changes

2

but he felt that pricing was still necessary, and hoped that if control over pricing were given to another department, he could remain useful to that department. (*Id.*).

Allison's duties were gradually absorbed by the new technology and the employees in Texas. Specifically, data management became automated, so Allison was no longer needed to do data management. (Doc. 36-4 at 19:6-20:7). Additionally, a new group of employees in Texas generated the information required to make pricing decisions, so Allison was not needed to generate the same information. (*Id.*) According to Allison's supervisor, Scott Bixby, the changes to technology and the centralized business systems eliminated the need for Allison's position. (*Id.*).

In April, Allison responded to and signed a DSD Survey and indicated that he thought the recent position eliminations and director firings were eroding the confidence and trust in the future of the company. (Doc. 38 at 7). After submitting the survey, Allison continued to express his concerns to Bixby about candor and trust within the department throughout the month. (Doc. 37 at 10). Throughout the course of May, Bixby believed Allison would remain with Farmer Bros. (Doc. 36-4 at 72:2-8). On May 25, 2016, Bixby advised Allison that the price analysis work was going to change from the "past approach" to a team approach to pricing decisions and that if it did not "feel right" to Allison that they "should talk" about him continuing to work for pricing. (Doc. 38 at 24). The next day, Allison sent an

email to the management team expressing his concerns with moving forward on pricing initiatives without consulting members of the pricing team. (*Id.* at 13).

Approximately a month later, Bixby emailed Farmer Bros.' head of Human Resources, Susan Gargis, regarding a "DSD People Update." (Doc. 38 at 26). In the email, Bixby advised Gargis that Allison's work in pricing "was moving to a team based approach, [so] his location/skills won't be need[sic] going forward." (*Id.* at 29). Shortly thereafter, Bixby requested that Allison come to Texas to discuss his performance. Allison was let go at the meeting. Allison had worked for Farmer Bros. for 33 years when he was terminated from the company. (Doc. 37 at ¶ 1). At the time his position was eliminated, Allison was working in the pricing division in Billings, Montana. (*Id.*). Farmer Bros. has not replaced Allison in Montana or hired anyone else in Montana to perform the duties he had at the time his employment ended. (Doc. 33-3 at 68:22-69:5; 87:7-21).

## II. Legal Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit

4

under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

### A. Wrongful Discharge

Allison alleges that his discharge was wrongful under Montana's Wrongful Discharge from Employment Act (WDEA) because it was not for good cause. Farmer Bros. asserts summary judgment is appropriate. Allison argues genuine issues of material fact preclude summary judgment but the undisputed facts show that judgment as a matter of law must be granted in Farmer Bros.' favor.

The WDEA states:

(1) A discharge is wrongful only if:

>  (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

>  (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or

5

(c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39-2-904.

"Good cause" is defined as "reasonable job-related grounds for dismissal" based on either: (1) "failure to satisfactorily perform job duties"; (2) "disruption of the employer's operation"; or some other (3) "legitimate business reason." Mont. Code Ann. § 39-2-903(5). A "legitimate business reason" is one that "is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Buck v. Billings Montana Chevrolet, Inc.*, 811 P.2d 537, 540 (Mont. 1991).

While an employer has the important right to exercise discretion over who it will keep in its employ, *McConkey v. Flathead Electric Co-op.*, 125 P.3d 1121, 1126 (Mont. 2005), "[o]f equal importance [], is the legitimate interests of the employee to secure employment." *Buck*, 811 P.2d at 540.

In order to "defeat a motion for summary judgment on the issue of good cause, the employee may either prove that the given reason for the discharge is not 'good cause' in and of itself, or that the given reason 'is a pretext and not the honest reason for the discharge.'" *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, 441 (Mont. 2008). The employee must present "evidence, and not mere speculation or denial," to create an issue of fact. *Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 7 (Mont. 1993).

1. **Good Cause**

Farmer Bros. maintains that it had a legitimate business reason for terminating Allison's employment, and therefore he was terminated for good cause as a matter of law. Specifically, Farmer Bros. argues its legitimate business reason for Allison's termination was that his position was eliminated as a result of Farmer Bros.' company-wide cost savings and efficiency initiative. (Doc. 32 at 7). Farmer Bros. argues that elimination of a position for economic reasons constitutes a "legitimate business reason" to discharge an employee under Montana law. The Court agrees.

It is "well settled" under Montana law that economic conditions constitute a legitimate business reason or good cause for dismissal of an employee. *See Flanigan v. Prudential Federal Savings and Loan Association*, 720 P.2d 257, 261 (Mont. 1986) (employers must be able to "engage[] in legitimate reductions in force necessary to maintain the economic viability of the company"); *Hobbs v. Pacific Hide and Fur Depot*, 771 P.2d 125, 130 (Mont. 1989) (an employer is entitled to be motivated by and serve its own legitimate business interest and must be given discretion who it will employ and retain). Although these cases were decided prior to the enactment of the WDEA, the Montana Supreme Court reaffirmed this rule post-WDEA in *Cecil v. Cardinal Drilling Co.*, 797 P.2d 232

(1990) (holding that economic conditions constitute a "legitimate business reason[.]).

In *Cecil*, the district court found that an oil executive was discharged for good cause when the discharge was due to a drop in the price of crude oil. 797 P.2d at 234-35. Affirming the district court, the Montana Supreme Court was explicit that "an employer is entitled to be motivated by and serve its own legitimate business interest and must be given discretion who it will employ and retain in employment." *Id.* Here, according to Bixby's testimony, which is supported by his email to Gargis, Farmer Bros.' reason for terminating Allison's employment was "the work [Allison] currently does in pricing is moving to a team based approach, and his location/skills [wasn't] needed going forward." (Doc. 38 at 26). Farmer Bros. strategic decision to terminate Allison's position qualifies as a legitimate business reason.

2.   **Pretext**

Allison's good cause claim can survive summary judgment if he can raise a genuine issue of material fact as to whether the given reason for his discharge was pretextual and not the honest reason for discharge. *Becker*, 191 P.3d at 441. Mere denial of the stated reason for discharge will not suffice. *Id.*

Allison argues that the economic reasons asserted by Farmer Bros. as the cause for his discharge were pretextual and he was fired because he voiced

concerns about leadership and honesty. (Doc. 36 at 1). His claim, however, is supported only by speculation and is thus insufficient to raise a material issue of fact to withstand summary judgment. For example, Allison argues that there is no written evidence that the efficiency initiative was named "Project Evolution," as a suggestion that there was no initiative, but substantively he does not dispute that firings and reductions in Farmer Bros.' force occurred during and after Farmer Bros. moved to Texas as part of an initiative to make the company more successful. (Doc. 36 at 2). He also does not dispute that he was aware the company wanted to "move in a different direction" regarding pricing after the efficiency initiative, which would inevitably affect him directly as pricing manager. (*Id.* at 4).

Conversely, he speculates that his employment ended because he expressed concern about Farmer Bros. lack of candor and honesty with its employees, but he fails to point the Court to any evidence supporting his speculation. There is no evidence before the Court that anyone at Farmer Bros. took issue with his concerns regarding leadership. Allison argues that Bixby's communications with him support the inference that he was going to stay with the company until he started voicing leadership complaints. The Court disagrees. Bixby's communications seem to demonstrate that Bixby valued Allison's expertise but that ultimately the company decided to go in a different direction. This corresponds with the

9

undisputed facts that Farmer Bros. sought to streamline and centralize its business systems and added technology which resulted in the elimination of Allison's position.

Allison does not offer any other motive or reason for his termination. He merely denies that Farmer Bros. reasons were legitimate business reasons. Like in *Cecil,* while the record might arguably show that it was possible for Farmer Bros. to keep Allison employed during this initiative, the Court cannot speculate as to what Farmer Bros.' real reasons may have been, if they were in fact not as claimed. *Cecil,* 797 P.2d at 235. Allison has failed to meet his burden of raising a material fact issue sufficient to withstand a motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Farmer Bros.' motion for summary judgment (Doc. 31) is GRANTED. Farmer Bros.' request for oral argument is DENIED.

DATED this 27th day of July 2018.

SUSAN P. WATTERS
United States District Judge